# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| SARAH LEYLA POWELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:25-cv-00641-JAW |
| ) | |
| ADRIAN MAURICE POWELL JR., ) | |
| ) | |
| Respondent. ) | |

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

The Convention on the Civil Aspects of International Child Abduction
Done at The Hague on October 25, 1980
International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq.*

COMES NOW, Respondent Adrian Maurice Powell Jr., by and through his attorneys of record, Katrina A. Seipel and Katelyn D. Skinner of Buckley Law, PC, and hereby moves for dismissal of Petitioner's Petition on a summary judgment motion.

## CONFERRAL REQUIREMENT

Respondent's counsel certifies that she has conferred with Petitioner's counsel regarding the issues raised in this Motion for Summary Judgment via telephone on January 12, 2026. Counsel were unable to resolve the matter.

## MOTION

Respondent moves the Court for summary judgment on all claims made against him by Petitioner in Petitioner's Petition for Return of Children to Germany. Respondent brings this motion pursuant to Fed. R. Civ. P. 56 and LR 7 and 56. This motion is supported by the

following statement of undisputed facts and memorandum of points and authorities and the pleadings and papers on file in this matter.

## STATEMENT OF MATERIAL FACTS

The following are material facts, to which if taken in the light most favorable to Petitioner, the non-moving party, there is no genuine issue of material fact to be tried:

1. Petitioner alleges the wrongful date of retention of the children is February 8, 2025. Petition para. 36 and 55.

2. Petitioner consented for the children to travel from Germany to the US with Respondent in August 2024 so they could enroll in school in Maine. Petition para. 25.

3. Petitioner alleges that "Leyla intended to return to Germany with the children after she completed her education" Petition para. 28.

4. Petitioner reiterated to Respondent, after February 8, 2025, that "this [the children residing in the US] was only agreed upon for the time I am in school, see visa paperwork." Respondent's trial exhibit 128, page 7, message from Petitioner to Respondent on March 17, 2025.

5. Petitioner traveled to the US from Germany in December 2024 and began classes at York Community College in January 2025. Petition para. 29.

6. Petitioner remained enrolled in and attending college in February 2025. Petition para. 34 (referencing "on-campus job").

7. As of February 8, 2025, Petitioner had had housing, transportation, and a regular financial allowance. See Petition para 31 (she had an apartment); para 39, fn 4 (she had

a car); Answer and Counterclaims para. 40 and referenced exhibits B & C (she received regular payments from Respondent).

8. Petitioner reiterated her commitment to her US school in March 17, 2025. Respondent's trial exhibit 128, page 7, message from Petitioner to Respondent on March 17, 2025.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Hague Convention on the Civil Aspects of International Child Abduction, in force between the United States and Germany, aims to secure the prompt return of children wrongfully removed or retained in any Contracting State. Convention Article 1. A child's removal or retention away from their habitual country of residence to the United States is "wrongful" where

" a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

Convention Article 3.

The "threshold determination" the court must make is "whether there had been any retention of the children at all." *Toren v. Toren*, 191 F.3d 23, 27 (1st Cir. 1999).

In *Toren*, the relationship between the parents had irrevocably broken down to the point that the parents successfully divorced. 191 F.3d at 25. Pursuant to their divorce, the parties reached a separation agreement ("the May 20 agreement"), which provided that the children

would live with the mother in the US for several years, but not beyond July 21, 2000. *Id.* The mother and children moved to the US in July 1996, and mother filed documents in the US which attempted to modify the May 20 agreement. *Id.* at 26. After some procedural back and forth, the father filed a Hague Convention petition, where he argued, in essence, that mother's actions amounted to a wrongful retention of the children within the meaning of Article 3 of the Hague Convention. *Id.* To support his petition, the father pointed to mother's attempt to alter the May 20 agreement as proof that she intended to retain the children in the US. *Id.* at 27-28.

The *Toren* trial court found in the father's favor and ordered the return of the children, but the decision was reversed on appeal. *Id.* at 27. In reversing the lower court, the First Circuit Court of Appeals held that "the district court jumped the gun by addressing the issue of the children's habitual residence prior to making the threshold determination as to whether there had been any retention of the children at all." *Id.* The court further held:

> Even if the father had alleged facts sufficient to support his claim that the mother intended to retain the children in the United States after July 21, 2000, we do not believe that the Hague Convention or ICARA would enable us to exercise jurisdiction over such a claim. *To the extent that the father's argument is based on the mother's future intent, the father is seeking a judicial remedy for an anticipatory violation of the Hague Convention. But the Hague Convention only provides a cause of action to petitioners who can establish actual retention. Therefore, we do not see how a petitioner like the father, alleging only an anticipatory retention, can invoke the protections of the Hague Convention.*

*Id.* at 28 (emphasis added; internal citation removed).

Here, Petitioner and Respondent agreed that the children would remain in the US until, at least, Petitioner completed her education. Petition para. 28; Answer para. 28. Petitioner alleged a wrongful retention on February 8, 2025. It is impossible for a wrongful retention to

have occurred on February 8, 2025 as Petitioner had not completed her education. Petitioner's unilateral retraction of the agreement does not create a retention.

If a retention is found, and before determining a child's habitual residence, the court must fix the date on which the alleged wrongful removal or retention took place. The text of the Convention directs courts to only one point in time in determining habitual residence: the time "immediately before the removal or retention." [1] Convention Art. 3.

Courts have held that, when analyzing date of retention, that the retention of a child for purposes of the Convention "is a singular and not a continuing act." Marks ex rel. SM v Hochhauser, 876 F 3d 416 (2d Cir. 2017).

Establishing the date of retention is simple where the evidence shows that the parties had a specific return date for the children. Such a circumstance corresponds to direction given in the Explanatory Report by Elisa Perez-Vera[2]: the retention is "wrongful" if the child is not returned by the date "on which the child ought to have been returned to its custodians." Perez-Vera Report, para. 108. Thus, when the petitioner has consented to the child's travel abroad only until a specific date, courts have concluded that the retention becomes "wrongful" after that date.[3]

---

[1] The Hague Abduction Convention: Practical Issues and Procedures for Family Lawyers, 4th Ed., Jeremy Morley, (2025), American Bar Association, page 102.

[2] The *Pérez-Vera Report* is the product of the official reporter for the 1980 sessions of the Hague Conference that led to the approval of the Convention. The report is recognized as the official history and commentary to the Hague Convention and is a "source of the background on the meaning of the provisions of the Convention." U.S. courts routinely cite to this report for guidance on interpreting the treaty.

[3] See e.g. Demaj v Sakaj, 2013 WL 1131418 at 3, 7 (D. Conn. 2013); Velasquez v Green, 2012 WL 2885662 (ED Tex 2012), report and recommendation adopted, 2012 WL 6569792.

Here, Petitioner's Petition stated that "Leyla intended to return to Germany with the children after she completed her education." Petition para 28. Respondent's Answer responds by stating: "Respondent agrees, that the parties agreed that the children would remain living in the US at least through Petitioner's "completion of her education" in the US. Respondent agrees that Petitioner has not completed her education in the US." Respondent's Answer and Counterclaims, para 28.

The parties were in agreement that the children would remain in the US, at a minimum, through the completion of Petitioner's US education. Petitioner came to the US in December 2024, and is presently in the US on an F1 visa/student visa. Petition para 23, 29.

Petitioner has not alleged that her education is complete and thus the children should return to Germany. Instead, Petitioner has alleged that "she informed [Respondent] that she was going back to Germany with the children" on February 8, 2025. Petition para. 36. Petitioner alleges that she "communicated her decision to return to Germany with the children and demanded their passports" to Respondent in February 2025. Petition para 69.

Petitioner has seemingly retracted her consent for the children to remain in the US until her education is complete. Courts have held that if a petitioner has a change of heart after the child is removed from their country of habitual residence, and does not revoke their consent until after the removal, that it is too late. The United States District Court for the Southern District of New York, found that petitioner-mother's "post hoc" regret that she had agreed to allow her daughter remain in New York while the petitioner attended school in Canada, reflected "an attempt at revocation or modification of the previously-provided

Page 6 – RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

consent" to leave the daughter in New York. The petitioner's change of heart was insufficient to "revive her right to return under the convention." In re Kim, 404 F.Supp 2d 495.

The Ninth Circuit has likewise held that a petitioner-mother who allowed the father to take the child to live in the US, but later, after the child left, claimed the visit was only to be for no more than two weeks, found that the purported revocation of her prior consent came only after the child had already been taken to the US and that it was too late. Gonzalez-Caballero, 251 F3d 789.

Petitioner may attempt to argue that she provided only "conditional consent" for the children's move to the US. She may claim that the consent was conditioned upon Respondent's promise to pay her tuition, housing, transportation, and a financial allowance.

However, on the day Petitioner alleges the children were wrongfully retained, February 8, 2025, and note that the date of wrongful retention can only be one day and cannot be continuing, Petitioner had her tuition paid, she had housing, transportation, and a regular financial allowance. *See* Petition para. 29 (she began her classes at York Community College in January 2025); para 31 (she had an apartment); para 39, fn 4 (she had a car); Answer and Counterclaims para. 40 and referenced exhibits (she received regular payments from Respondent).

Given due consideration to the facts in the light most favorable to non-moving party, the Court can only find that there was no retention on February 8, 2025. Petitioner's Petition must be dismissed.

//

//

## CONCLUSION

In light of the foregoing argument and authority, Respondent respectfully requests that this Court grant Respondent's Motion for Summary Judgment.

Date: January 16, 2026

/s/ Katrina A. Seipel
Katrina A. Seipel, OSB #164793
kas@buckley-law.com
Katelyn D. Skinner, OSB #105055
kds@buckley-law.com
Buckley Law, P.C.
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Telephone: 503-620-8900
Of Attorneys for Respondent
*Pro Hac Vice*

Nicole Milam, Esq. (Bar No. 6369)
Milan Law Collective
PO Box 237
Cumberland Center, ME 04021
nicole@milamcollective.com
Of Attorneys for Respondent
*Local Counsel*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served by e-mail and e-filing via CM/ECF, on counsel for Petitioner, Bradley C. Morin, to: bmorin@bourqueclegg.com, and Joshua Burgess Narey, to: jnarey@bourqueclegg.com, at their office address of 949 Main Street, PO Box 1068, Sanford, ME 04073, on January 16, 2026.

/s/ Katrina A. Seipel
Katrina A. Seipel, OSB #164793
Of Attorneys for Respondent, *Pro Hac Vice*