UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SARAH LEYLA POWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00641-JAW |
| | ) | |
| ADRIAN MAURICE POWELL, JR., | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ON MOTION FOR ATTORNEY'S FEES, COSTS, AND TRAVEL EXPENSE**

In this international custody dispute over two minor children under the Hague Convention, the court granted a mother's petition for an order allowing her to return to Germany with her children and for enforcement of the custody order of a German court. Having prevailed, the mother moves for the court to order that the respondent, her former husband and father of the children, pay attorney's fees, costs, and travel expenses. Finding that the treaty provides that a prevailing petitioner is entitled to attorney's fees and costs, the court grants the motion, reducing only the request for expert witness reimbursement.

## I.    PROCEDURAL HISTORY

On December 22, 2025, Petitioner Sarah Leyla Powell initiated this action pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention or Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986), as implemented by the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-9011

(formerly 42 U.S.C. §§ 11601 *et seq.*).  *Verified Pet. for Return of Children to Germany and for Issuance of Show Cause Order* (ECF No. 1) (*Pet.*).

Ms. Powell filed her verified petition requesting an order directing the return of her two minor children (the children), N.P. and Z.P. to Germany, *Pet.*, and asked for expedited consideration of the petition and the issuance of an order to show cause against the Respondent Adrian Maurice Powell, Jr.  *See Mot. for Expedited Consideration of Verified Pet. for Return of Children to Germany and Issuance of Show Cause Order* (ECF No. 3).

On January 16, 2026, the Petitioner filed her trial brief, *Pet'r's Pre-Hearing Brief* (ECF No. 26), and on January 16, 2026, the Respondent filed his answer, *Resp't's Answer and Affirmative Defenses* (ECF No. 27), his amended answer and counterclaim for reasonable attorney's fees and costs, *Resp't's <u>Am.</u> Answer, Affirmative Defenses* (ECF No. 28), and his trial brief.  *Resp't's Pre-Hearing Brief* (ECF No. 29).  The Petitioner opposed Respondent's request for attorney's fees and costs arguing that ICARA only provides an award of fees to prevailing petitioners. *Answer to Countercl.* at 1 n.1 (ECF No. 31).

The Court conducted a two-day evidentiary hearing on January 22-23, 2026, after which the parties filed post hearing briefs and responses, labeled as replies, but the Court did not allow further reply.  *Min. Entry* (ECF No. 50); *Min. Entry* (ECF No. 52); *Resp't's Post-Trial Brief* (ECF No. 60); *Pet'r's Post-Trial Brief* (ECF No. 61); *Pet'r's Reply to Resp't's Post-Trial Brief* (ECF No. 62); *Resp't's Reply Brief* (ECF No. 63).

On March 2, 2026, the Court issued its findings of fact and conclusions of law, granting the petition and ordering the children to return to Germany, *Amended Findings of Fact and Conclusions of Law* (ECF No. 74). That same day, the Petitioner collected her children's passports from the Clerk, *Receipt for Return of Passport* (ECF No. 67), and on March 4, 2026, the Clerk entered judgment on behalf of the Petitioner. *J.* (ECF No. 68).

Before the Court is the Petitioner's March 9, 2026 motion for attorney's fees, costs, and travel expenses, *Mot. for Att'y's Fees, Costs and Travel Expense* (ECF No. 69) (*Pet'r's Mot.*), which Petitioner submitted alongside the declarations of her attorney, Bradley Morin, *id.*, Attach. 1, *Decl. of Bradley C. Morin Regarding Att'y Fees and Costs* (*Morin Decl.*), and herself. *Id.*, Attach. 2, *Decl. of Sarah Leyla Powell* (*Powell Decl.*). On March 23, 2026, the Respondent objected. *Resp't's Obj. to Pet'r's Mot. for Att'y Fees, Costs and Travel* (ECF No. 70) (*Resp't's Opp'n.*). On March 30, 2026, the Petitioner replied. *Pet'r's Reply to Resp't's Opp'n to Mot. for Att'y's Fees, Costs and Travel Expense* (ECF No. 71) (*Pet'r's Reply*).

## II.   THE PARTIES' POSITIONS

### A.   The Petitioner's Motion

Citing the provision of ICARA stating that a prevailing petitioner is presumptively entitled to fees, the Petitioner moves this Court to order the Respondent to pay her attorney's fees and costs along with travel expenses and costs for her expert witness. *Pet'r's Mot.* at 1. "Petitioner has submitted an affidavit of counsel and itemization of attorney's fees and costs to enable the Court to determine

a reasonable fee award" based on the lodestar—the product of the number of hours worked and a reasonable hourly rate. *Id.* at 2.

### B.      The Respondent's Opposition

The Respondent asks the Court to deny the Petitioner's request or, alternatively, significantly reduce the award. *Resp't's Opp'n* at 5.  He argues that while ICARA provides that "a prevailing petitioner is presumptively entitled to fees, that presumption is expressly limited by equitable considerations, and courts retain broad discretion to reduce or deny an award where equity requires." *Id.* at 1 (citing caselaw).  The Respondent asks the Court to reduce the fee imposed because (1) the Respondent lacks the ability to pay the requested amount due to changed financial circumstances; (2) the Respondent acted in good faith; (3) the Respondent was motivated by concern for the children; and (4) the amount requested is excessive. *Id.* at 2-4

### C.      The Petitioner's Reply

The Petitioner argues that the Respondent has not made the case to avoid mandatory fee shifting under ICARA nor adequately demonstrated—through affidavits or finance statements—that the award amount is clearly inappropriate. *Pet'r's Reply* at 1.  In addition to challenging the Respondent's ability to pay, she challenges Respondent's "good faith" assertion, arguing that Respondent "withheld the children's passports from Leyla with the specific intent of preventing her return to Germany." *Id.* at 4.  Further, the Petitioner maintains that the fees were not excessive or unreasonable and, further, that the Respondent failed to articulate what aspect of the fees he disputed. *Id.* at 4-5.

### III.    LEGAL STANDARD

Under ICARA's fee-shifting provision, when a petitioner prevails, ICARA declares the Court:

> shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).  The purposes underlying the fee-shifting provisions "are to restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter" wrongful removal or retention "in the first place."  Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,511 (Mar. 26, 1986).

Courts evaluate two issues: "first, whether the claimed expenses are 'necessary,' and second, whether an order against the respondent would be 'clearly inappropriate.'"  *De Souza v. Negri*, No. CIV.A. 14-13788-DJC, 2015 U.S. Dist. LEXIS 19802, at *5 (D. Mass. Feb. 19, 2015) (citing *Whallon v. Lynn*, No. 00-cv-11009-RWZ, 2003 U.S. Dist. LEXIS 6501, at *5 (D. Mass. Apr. 18, 2003)).  The burden of proof to establish necessity is upon the Petitioner, while the Respondent has the burden to prove the award is clearly inappropriate.  *Id.*

### IV.    DISCUSSION

The Court addresses the necessity of Petitioner's proposed attorney's fees and expenses and then determines whether the Respondent has shown that the award is "clearly inappropriate."

5

A.    **The Petitioner's Proposed Attorney's Fees, Litigation Expenses, Travel Expenses, and Expert Expenses**

1.    **Attorney's Fees**

a.    **Reasonable Hourly Rate and Hours Expended**

Attorney's fees must be reasonable. *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 562 (1986). To calculate a reasonable award, federal courts use the "lodestar" method—multiplying the reasonable hourly rate by the reasonable number of hours expended on litigation. *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). It is the duty of the Petitioner to demonstrate that the fees are reasonable, supported by documentation like affidavits, invoices, and verifications that the proposed hourly rate is reasonable. *Id.*

The Petitioner requests $59,581.00 in legal fees and $1,735.24 in costs related to the Hague Convention proceedings for a total of $61,316.24 in legal fees and costs. *Morin Decl.* ¶ 11. Attorney Morin, who has practiced law since 2006, billed 139.5 hours at $295 per hour. *Id.* ¶¶ 4, 11. His partner, attorney Joshua Narey, who has practiced law since 2025, billed 82.3 hours at $225 per hour. *Id.* ¶¶ 5, 11. Paralegal services were billed at $120 per hour. *Id.* at ¶ 6.

Attorney Morin stated that he believes these rates to be reasonable, and similar to rates for comparable work done for his clients and by other attorneys with similar experience levels. *Id.* ¶ 7. Attorney Morin explained that though usually only one attorney works on a case, he needed to enlist Attorney Narey given the expedited timeline and lack of familiarity with the Hague Convention issues. *Id.* ¶¶ 8-9.

Attorney Morin also explained the ways he cut billing: trying to charge only for one attorney when two conferred; omitting copying costs; and offering a discounted rate to prepare the motion for fees, costs, and expenses. *Id.* ¶ 12; *Pet'r's Mot.* at 3 n.1.

Unlike some attorney's fee disputes, there is no legitimate controversy about the Petitioner's attorneys' hourly rates. As just noted, Attorney Morin filed his own sworn declaration that his and Attorney Narey's hourly rates are not only reasonable but are commensurate with the hourly rates of other similarly experienced counsel in his region. In his response, the Respondent did not challenge the hourly rates for either Attorney Morin or Attorney Narey, and therefore the Court accepts the hourly rates of both counsel as the first step in performing the lodestar analysis. *TD Bank, N.A. v. Estate of Woodman*, No. 2:17-cv-00163-JAW, 2019 U.S. Dist. LEXIS 103940, at *5 (D. Me. Jun. 21, 2019).

Proceeding to the next step under the lodestar analysis, the Court observes that the Respondent made only a generalized objection to "extensive research, drafting, and internal communications that go beyond what was reasonably necessary to litigate a Hague Convention petition." *Resp't's Opp'n* at 4. But Mr. Powell offered no specifics and failed to object to any particular entry that he proposed was unwarranted or excessive. He merely asserts that the "any fee award should be substantially reduced." *Id.*

In light of the Respondent's nonspecific objections to the Petitioner's attorney's fees, the Court performed its own independent review as to whether the bill contains "necessary expenses incurred . . . during the course of proceedings." 22 U.S.C.

7

§ 9007(b)(3).  The Court finds that the Petitioner's submitted attorney's fees were "necessary" and awards the fees in full.

### b.   Fees for Fees

"[T]he court has the obligation to determine whether the requested fees and costs were 'necessary' to secure the children's return."  *Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005).  Beginning on March 4, 2026 and running though March 8, 2026, there are several entries related to drafting the motion for fees and reviewing bills, totaling to $420.  *Morin Decl.* at 21.  These charges—known as fees for fees—occurred after the children were returned do not relate to the return of the children.

Courts have disallowed fees incurred after the return of the children.  *See, e.g.*, *Salvidar v. Rodela*, 894 F. Supp. 2d 916, 938 (W.D. Tex. Oct. 1, 2012) ("The Court will also disallow 0.6 hours spent by [Petitioner's counsel] on certain tasks undertaken after the child had been returned to Mexico"); *Schwaneberg*, 2026 U.S. Dist. LEXIS 23263, at *5 ("Petitioner's attorneys' fees incurred defending the contempt motion were not related to the return of [the child], who had been returned to South Korea months prior").  In view of this restriction, the Court reviewed Bourque, Clegg, Causey & Morin's itemized bill and found no entries for substantive legal work on the case after March 2, 2026 and therefore has not reduced the bill based on this issue.

As an exception to the general rule, courts have allowed for reasonable fees after the children were returned for proceeding with a fee application by the prevailing party.  *See e.g.*, *Moss v. Moss (In re SKM)*, No. 13 CIV. 4167 (ALC), 2014 U.S. Dist. LEXIS 207584, at *15-16 (S.D.N.Y. Apr. 16, 2014) (stating "Courts have

held that fees generated after the children had been returned are not recoverable since they were not necessary for their return" but concluding that the time billed for preparing the motion for costs is recoverable). This is consistent with the First Circuit's approval of fees for attorney's fee application under other fee-shifting statutes. *See e.g. Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (allowing fees incurred in the pursuit of fees under 42 U.S.C. § 1988); *Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993).

Some courts balk at awarding fees for pursuing attorney's fees. As one court has said of such charges, "it would be unreasonable to require Respondent to pay this portion of the bill. The Court therefore excludes those hours from Petitioner's attorneys' fee award." *Pacheco v. Martinez*, No. 2:24-CV-02638-TLP-TMP, 2025 U.S. Dist. LEXIS 190318, at *8 (W.D. Tenn. Sept. 26, 2025); *Idkeidek v. Idkeidek*, No. 2:25-CV-02903-TLP-CGC, 2026 U.S. Dist. LEXIS 71479, at *7 (W.D. Tenn. Apr. 1, 2026) (same quote).

However other courts have allowed fees for fees but reduced what they considered excessive awards. *See e.g.*, *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 939 (W.D. Tex. 2012) (reducing fees for fees by 64% and noting "the Court believes that 33.3 hours is excessive, and thus, the Court will award fees for fees for 12.0 hours"); *In re SKM*, 2014 U.S. Dist. LEXIS 207584, at *15-16 (awarding fees for fees but "reduce[ing] the requested 35.6 hours spent preparing a motion for costs to 12 hours). Similarly, courts have sometimes reduced the hourly rate counsel are allowed to charge for preparing the application for attorney's fees. *Brewster*, 3 F.3d at 494

("[B]ecause litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation").

Here, Attorney Morin anticipated the *Brewster* hourly rate reduction issue and reduced their hourly rates to $100 for proceeding with the attorney's fee application. *Pet'r's Mot.* at 3 n.1. By the Court's calculation, Attorneys Morin and Narey spent 4.2 hours preparing the attorney's fee petition. *See Morin Decl.* at 21 (entries from March 4, 2026 through March 8, 2026). The Court does not consider the $420 requested for preparing the motion for fees excessive, especially considering that counsel charged the Petitioner a reduced rate for $100 per hour. *Pet'r's Mot.* at 3 n.1. In addition, Mr. Powell has not specifically objected to the assessment of the fees related to the attorney's fee application.

### 2. Litigation Expenses

As for the $1,735.24 in costs related to the Hague Convention proceedings, the Court awards the full amount. These fees include a filing fee, the cost of service of process, a subpoena witness fee, a translation fee, a transcript fee, and parking fees. *Morin Decl.* at 22. In other words, they are "courts costs" and "legal fees" associated with the action. 22 U.S.C. § 9007(b)(3).

### 3. Travel Expenses

The Petitioner submitted a declaration and supporting documentation showing that she spent the equivalent of $2,481.89 on tickets to return with her children to Germany. *Powell Decl.* ¶ 2. The Court awards this amount in full. *See* 22 U.S.C. § 9007(b)(3) ("Any court ordering the return of a child pursuant to an action brought

10

under section [22 U.S.C. § 9003] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including . . . transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate"). The award, on balance, both returns the Petitioner to the financial position she would have been but for the Respondent's wrongful retention of the children and deters such conduct from happening again.

### 4.    Expert Expenses

The Petitioner seeks $4,318.03 as compensation for the equivalent value, in Euros, which she paid to her German attorney—Andreas Hanke—for his testimony and preparation for the trial. *Powell Decl.* ¶ 4. Although there is no accompanying invoice, the Petitioner claims that Attorney Hanke charged 300 euros per hour for 12.45 hours of work. *Id.*

However, the Court is not convinced, based on the record before it, that the Petitioner has sustained her burden to prove necessity for the entire submitted fee. Dr. Hanke's compensation was discussed at length during the evidentiary hearing. *Tr. of Proceedings Volume I of II* at 26:11-30:13 (ECF No. 56) (*Tr. Vol. I*). Dr. Hanke's testimony on his rate and total hours differs from what the Petitioner provides in her declaration, supporting the motion. *Compare Tr. Vol I* at 26:11-30:13 (discussing a rate and hours worked), *with Powell Decl.* (stating a different rate and more hours worked). The Court is concerned that the 12.45 hours includes work beyond testimony and preparation for the hearing held before this Court.

During the hearing, Dr. Hanke, mindful that German law considers compensation privileged, hesitated to answer questions on compensation. The

Respondent's attorney first asked Dr. Hanke "[h]ow much have you charged the petitioner for your services?" and Dr. Hanke answered "I think that falls under client-attorney privilege." *Tr. Vol. I* at 26:11-13.

After an exchange between the lawyers, the Respondent's attorney narrowed her question—excluding work for the Petitioner unrelated to his preparation and testimony before the Court. The Respondent's attorney explained that Rule 26 requires expert witnesses "to provide a statement of the compensation to be paid for the study and testimony in this case" and while her initial "question was about all funds charged to the petitioner for the services" she was willing to "revise [her] question limited to compliance with FRCP 26." *Id.* at 27:3-12. The Petitioner's attorney agreed that the original question concerned "all the work being done in Germany." *Id.* at 27:13-16. The Court made it clear, explaining "[t]he issue here . . . is not what [Dr. Hanke] charged the client generally but only what [he is] charging the client for preparation for this testimony as an expert and for [his] testimony here today, which is different than the earlier question." *Id.* at 27:19-28:3.

Dr. Hanke then testified about his rate,[1] which he said was 350€ per hour plus a 19% VAT.[2] Dr. Hanke explained that he worked a total of five hours and 20 minutes, prior to and in preparation for testifying. *Id.* 28:4-22; 29:23-30:4. Assuming

---

[1]     In her motion, the Respondent explains that Dr. Hanke "ended up charging a lower hourly rate than he testified at trial." *Pet'r's Mot.* at 3 n.3.

[2]     The transcript says "VIT", but the Court believes Dr. Hanke was referring to VAT or Value Added Tax, which is assessed at a standard rate of 19%.

12

that Dr. Hanke testified for close to 40 minutes, the Court rounds his total hours for his testimony and preparation for trial to six.

However, in calculating her expert expenses, the Petitioner states that Dr. Hanke charged her for 12.45 hours of work. *Powell Decl.* ¶ 4. In light of the exchange during the hearing and Dr. Hanke's testimony under oath before this Court, the Court is concerned that the other approximately 6.45 hours charged to the Petitioner has to do with other work he has done for her in Germany, which would not be chargeable under the Hague Convention. At the 300€ per hour rate provided in the Petitioner's declaration, the Court concludes that for the six hours of preparation and testimony related to his trial testimony, Dr. Hanke charged 1,800 Euros, the equivalent to $2,080.98 at the relevant exchange rate. *See Powell Decl.* at 9 (exchange rate provided).

B.    **Whether the Respondent has Shown That the Award is "Clearly Inappropriate"**

The Respondent has not met his burden to show that the award is "clearly inappropriate." Although the First Circuit has not addressed the "clearly inappropriate" language, courts have identified circumstances that render the award of fees "clearly inappropriate" under ICARA. *See* 22 U.S.C. § 9007(b)(3). "The first is when a fee award imposes such financial hardship that it significantly impairs a respondent's ability to care for her children . . . [a]nd the second is when the respondent had a good-faith belief that removing the children was lawful or otherwise justified." *Pacheco*, 2025 U.S. Dist. LEXIS 190318 at *14 (citing cases). The Respondent argues both here.

13

First, the Respondent argues that "he does not have the financial ability to satisfy such an award" and that his "financial circumstances have materially declined, including a significant decrease in income following losing his business." *Resp't's Opp'n* at 2. In response, the Petitioner argues that his failure to produce evidence on his ability to pay is alone a reason to deny him relief. *Pet'r's Reply* at 1 (citing *De Souza*, 2015 U.S. Dist. LEXIS 19802 at *10 ("[A]lthough their opposition to de Souza's motion is based largely upon their financial condition, they provide no supporting documentation or evidence of same"). The Petitioner also argues that the Respondent has a strong earning capacity in his insurance job. *Pet'r's Reply* at 2.

Although the Court is sympathetic to the Respondent, his difficult financial situation alone does not render the award inappropriate. *See Gamboa v. Williams*, No. 4:24-cv-3020, 2025 U.S. Dist. LEXIS 78479, at *12 (S.D. Tex. Apr. 24, 2025) ("While the Court is sympathetic to Respondent's financial difficulties, those assertions alone—without any evidence that would render the award clearly inappropriate—do not overcome the presumption that the award should be granted"). Indeed, the twin aims of ICARA—to restore the Petitioner to the financial position she would have been in had there been no wrongful retention and to deter such wrongful retention in the first place—would be frustrated if the Court excused the Respondent from a duty to pay on the mere assertion of financial difficulty. *Kufner v. Kufner*, No. CIV.A. 07-046 S, 2010 U.S. Dist. LEXIS 166615, at *7 (D.R.I. Feb. 3, 2010) ("Obviously, a finding that denies or substantially reduces an award of fees and

costs to a party who prevails in establishing wrongful removal under ICARA does not further either of these purposes").

In addition, as the Court intimated at the hearing, the Court is impressed with Mr. Powell. Although the parties did not introduce much background information about Mr. Powell, he is a veteran, having served in the United States Air Force. *Tr. Vol. I* at 72:2-5. Mr. Powell is entrepreneurial, having started an ice cream business in Maine that, according to him, was bringing in "[a]round $20,000 every month." *Tr. of Proceedings Vol. II of II* at 224:7-10 (ECF No. 57) (*Tr. Vol. II*). Although he closed the ice cream business, he has been selling life insurance and bringing in about $3,400 per month. *Id.* at 224:11-14. In view of the Court's favorable impression of Mr. Powell's abilities, he has not sustained his burden to demonstrate that an award of attorney's fees to Ms. Powell would be "clearly inappropriate."

Second, the Respondent argues that he acted in good faith bringing his children and the Petitioner to the United States. *Resp't's Opp'n* at 3. The Petitioner counters that this Court's order, returning the children to Germany, makes plain that the Respondent "withheld the children's passports from Leyla with the specific intent of preventing her return to Germany with the children" and that "there was significant power imbalance between" the Petitioner and the Respondent, with the Respondent holding all the power. *Pet'r's Reply* at 4. The Court agrees with the Petitioner—the Respondent did not have a good faith belief that retaining the children's passports was permissible, especially considering he told the Court he intentionally did not return the passports to prevent the Petitioner from taking the kids back to Germany.

15

*Tr. Vol. II* at 260:4-11.  That is, even if he acted in good faith and in the children's best interest in initially bringing them to the United States, he did not do so when improperly retaining their passports.

Finally, the Respondent argues that the Petitioner's requested relief is excessive, including "impermissible block billing, and charges for litigation strategy and duplication of effort, rather than work necessary to secure return under the Hague Convention." *Resp't's Opp'n* at 4.  The Petitioner disagrees, emphasizing instances where her attorneys struck charges and defended the amount of research required to prepare the case. *Pet'r's Reply* at 5.  The Court reviewed Mr. Powell's general objections to the attorney's fees and the itemized bill, and in the absence of any specific objection, the Court concludes that Ms. Powell has sustained her burden to establish that she is entitled to an order compelling Mr. Powell to pay the submitted fees, and the Court further concludes that Mr. Powell has not sustained his burden to demonstrate that the awarding of fees would be clearly inappropriate.

### C.    Summary

Although the Petitioner's attorneys have not been paid, beyond a retainer, *Morin Decl.* at ¶ 13, the statute provides that the attorneys for the prevailing party must be paid for their time, research, advocacy, and incurred expenses.  If the Petitioner had the funds to pay the attorneys, perhaps she would have already paid them and be seeking reimbursement from the Court.  As it stands, the Petitioner seeks reimbursement for the costs she herself incurred—the flights and the expert counsel—and her attorneys seek reimbursement for their services rendered, directly from the Respondent.

## V.  CONCLUSION

The Petitioner is entitled to attorneys' fees, costs, and expenses in the amount asserted, except for the total amount of the German attorney's charges for expert testimony.  The Court GRANTS in part and DENIES in part the Petitioner's motion for Attorney's Fees, Costs and Travel Expense (ECF No. 69) and ORDERS the Respondent to pay Petitioner a total of $65,879.11.  This payment includes attorneys' fees in the amount of $59,581.00, $1,735.24 in litigation expenses, $2,481.89 in travel expenses, and $2,080.98 for the Petitioner's expert.  The Court denies only that portion of the expert witness fees and expenses request as exceeds $2,080.98.

The Respondent shall make the attorney's fee and litigation expenses award payable to the Petitioner's counsel.  The Respondent shall pay the Petitioner directly for the $2,481.89 in travel expenses and for the $2,080.98 in expert witness fees.  Any partial payment shall be made first to Ms. Powell, and, once her reimbursement award has been fully satisfied, payments shall be made to Bourque, Clegg, Causey & Morin, LLC.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2026

17